## IN THE MATTER OF HUGH CARBOY.

*County officers — power of the legislature to direct the mode of their appointment — Constitution, art. 10, sec. 2 — 1880, chap. 284.*

Chapter 284 of 1880, providing that thereafter the successors to the commissioners of charities of the county of Kings should not be elected by the people, but should be appointed for the first year by the president *pro tempore* of the board of supervisors of that county, and thereafter by the supervisor-at-large of that county, is constitutional.

The president *pro tempore* of a board of supervisors is a county authority within the meaning of section 2 of article 10 of the Constitution, authorizing the legislature to confer the power of appointing county officers upon "county authorities."

APPEAL from an order made at a Special Term, denying a motion for a *mandamus*.

*Charles J. Patterson*, for the appellant Carboy.

*William C. De Witt*, for the respondents, The Board of County Canvassers of Kings County.

DYKMAN, J.:

In the past the administration of the system of public charities in the county of Kings, embracing the asylums for the insane and the infirm, the parentless and the sick, together with the general distribution of relief to the necessitous, has been in the hands of the commissioners elected by the people.

In May, 1880, the legislature of the State, in the exercise of its legitimate functions, made a law creating a new board of commissioners of charities and corrections, with enlarged powers and duties, and interdicting the exertion of the power of choice for such office by the electors.

Temporarily to fill vacancies new commissioners were made appointable by the president *pro tempore* of the board of supervisors, but permanently the offices are in the future to be filled by appointment by the chairman of the board of supervisors of the county. (Laws of 1880, chap. 284.)

To place him in an attitude antagonistic to this law, about 200 votes were cast for the relator in one of the towns of Kings county at the last general election for the office of commissioners of charities for that county.

These votes were returned to the board of county canvassers, where they were entirely ignored and thrown out, and now he desires the court to compel the canvassers to state the vote and declare his election.

All claim founded on any view of power of the canvassers is waived, and a decision on the merits is desired.

The relator challenges the abolition of the elective system for the office in question, and claims that the legislation by which it is accomplished, is in contravention of that portion of the fundamental law of the State, providing that all county officers whose

election or appointment is not provided for by this Constitution shall be elected by the electors of the respective counties or appointed by the boards of supervisors or other county authorities as the legislature shall direct.

The relator is beset with many difficulties. The office which he seeks was not created by the Constitution, but the legislature bestowed on the electors the right to elect such officer. The same authority that conferred the power may restrict and limit its exercise, or take it altogether away. (*People ex rel. Furman* v. *Clute*, 50 N. Y., 459.) This has been done, and the franchise of the electors relating to this office is removed; as a necessary result all ballots cast for this office by electors are invalid.

It has been said that the office sought by the relator was not created or continued by the Constitution, because these commissioners stand in place of county superintendents of the poor. That office had statutory origin (Laws of 1824, p. 383, chap. 331), and was filled by appointment until 1847, after the adoption of the present Constitution of the State, when it was made elective by legislative enactment. This being so, it was within the competence of the legislature to abrogate the elective system for this office. It might indeed abolish the office altogether. (*People* v. *Snedeker*, 14 N. Y., 52.)

The board of canvassers therefore acted wisely and well to impute invalidity to the ballots returned for the relator for the reasons already stated. As votes thrown for an office unknown to law must be ineffective and inoperative, so votes for an office not elective by the people must be the same.

This examination shows that the relator can secure no title to the office he seeks, but his claim that the act of the legislature contravenes the Constitution is equally untenable.

In the first place if the provision for temporary appointment by the chairman *pro tempore* of the board of supervisors falls under the inhibition of the Constitution, the remainder of the act is not thereby invalidated, because the remnant is complete and capable of being executed. (*Matter of Village of Middletown*, 82 N. Y., 196.)

In the next place it must be held that the *pro tempore* chairman of a board of supervisors is a county authority within the meaning

of the Constitution. It is not needful to hold that he is a county officer, because county authority may be lodged where there is no office in the strict sense of that term.

Counties have corporate capacities and supervisors of counties are corporate bodies and represent their counties, and the chairman of these boards are clothed with certain powers and duties pertaining to their transactions, and they make him a county authority. His acts have authority and force coextensive with his county, and he may issue process running to its utmost bounds.

In no view, therefore, can the relator assert title to the office in question, and his application was properly refused.

The order appealed from should be affirmed, with costs.

BARNARD, P. J., and GILBERT, J., concurred.

Order denying *mandamus* affirmed, with costs.